UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:03CV1090 HEA |
| | ) | |
| CATHEDRAL ROCK CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss Complaint in Intervention, [Doc. No. 51]. Plaintiff opposes the Motion. For the reasons set forth below, the Motion is granted in part and denied in part.

**Facts and Background**

Plaintiff filed this Complaint in Intervention[1] in this *qui tam* action[2] against Defendants for alleged violations of the False Claims Act, 31 U.S.C. §§ 3729-3733k, (FCA), federal common law and equitable theories of unjust enrichment and disgorgement of profits. Plaintiff seeks to recover losses by its agency, the Department of Health and Human Services, (HHS), and its operating division, the

---

[1] See 31 U.S.C. § 3730(b)(4)(A)-(B).

[2] All original relators have dismissed the claims for which the United States has not intervened.

Centers for Medicare & Medicaid Services (CMS). The Complaint summarizes the allegations as follows:

> From July 1, 2001 until on or about the present date (hereinafter the "relevant period"), Defendants Cathedral Rock, Cathedral Rock Management, Harrington, and the Defendant Nursing Facilities, submitted or caused to be submitted false or fraudulent to the Medicare and Missouri Medicaid programs for services that were worthless in that they were not provided or rendered, were deficient, inadequate, substandard, and did not promote the maintenance or enhancement of the quality of life of the residents of the Defendant Nursing Facilities, and were of a quality that failed to meet professionally recognized standards of health care.

The Complaint contains six separate counts: Count I: False Claims Act pursuant to 31 U.S.C. § 3729(a)(1); Count II: False Claims Act pursuant to 31 U.S.C. § 3729(a)(2); Count III: False Claims Act pursuant to 31 U.S.C. § 3729(a)(3); Count IV: Common Law Fraud; Count V: Unjust Enrichment; and Count VI: Disgorgement of Profits.

Defendants move to dismiss for lack of subject matter jurisdiction, for failure to plead fraud with specificity and for failure to state a claim for "worthless" services.

## **Discussion**

Defendants challenge this Court's subject matter jurisdiction and request a dismissal pursuant to Fed.R.Civ.P. 12(b)(1). "'Federal courts are courts of limited

jurisdiction.'" *Myers v. Richland County,* 429 F.3d 740, 745 (8th Cir.2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of* Am., 511 U.S. 375, 377 (1994)). Because the parties do not fall within the perimeters of the diversity of citizenship jurisdiction statute, federal subject matter jurisdiction must rest on the presence of a federal question. *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 126 S.Ct. 1235, 1244 (2006).

Normally, the Court considers a claim to arise "under federal law if a federal cause of action appears on the face a well-pleaded complaint. *Oklahoma Tax Commission v. Graham,* 489 U.S. 838, 840-41, 109 S.Ct. 1519, 103 L.Ed.2d 924(1989). Under the well-pleaded complaint rule, the existence of a federal cause of action depends upon the plaintiff's claim rather than any defense that may be asserted by the defendant. *Id."* *Oglala Sioux Tribe v. C & W Enterprises, Inc.*, 487 F.3d 1129, 1130 -1131 (8th Cir. 2007). Plaintiff, as the party invoking federal jurisdiction, has the burden to establish the district court's jurisdiction under the FCA. *See Osborn v. United States,* 918 F.2d 724, 729-30 (8th Cir.1990); *see also Hays v. Hoffman*, 325 F.3d 982, 987 (8th Cir.2003).

The Complaint in Intervention sets forth that this action is brought pursuant to 31 U.S.C. § 3729 *et seq.*, the False Claims Act. In order to establish a prima facie case under the FCA, Plaintiffs must show that (1) Defendants presented a claim, or

caused a claim to be presented, to the United States; (2) the claim was false or fraudulent; and (3) Defendants knew the claim was false or fraudulent. 31 U.S.C. § 3729(a)(1); see also *United States ex rel. Golden v. Ark. Game & Fish Comm'n*, 333 F.3d 867, 870 (8th Cir.2003).[3]

Defendants rely on *United States ex rel. Totten v. Bombardier*, 380 F.3d 488 (D.C. Cir. 2004) for support of their argument that the Court lacks subject matter jurisdiction. *Totten*, however, was not decided on jurisdictional grounds, but rather, on whether a cause of action had been stated. In the instant case, Plaintiff alleges

---

[3] Title 31 U.S.C. § § 3729(a)(1), (2), and (3) provide:

Any person who-

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; [or]

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

...

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person, ...

claims arising under the laws of the United States, *i.e.* the False Claims Act.  On the face of Plaintiff's Complaint, Plaintiff articulates the basis of the Court's jurisdiction: the Complaint alleges that Medicare and Medicaid are federally funded; that Defendants submitted or caused the submission of false claims; and that Defendants knew that the claims were false.  As such, the basis of this Court's subject matter jurisdiction is indeed set forth in Plaintiff's Complaint.  The claims Plaintiff is asserting "arise under" the laws of the United States and are therefore within the Court's subject matter jurisdiction.  28 U.S.C. § 1331.

The Court's inquiry, however does not end here.  One issue before the Court is whether Plaintiff has sufficiently stated a claim under the FTC pursuant to Rule 12(b)(6).

The purpose of a motion to dismiss for failure to state a cause of action is to test the sufficiency of the complaint.  On May 21, 2007, the Supreme Court determined that *Conley v. Gibson's,* 355 U.S. 41, 45-46 (1957), "no set of facts" language "has earned its retirement." *Bell Atlantic Corp. v. Twombly,* __U.S.__, __, 127 S.Ct. 1955, 1969 (2007).  Noting the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief,' "the Supreme Court held that a viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic,* 127 S.Ct. at 1964-65, 1974.  In other words, "[f]actual

allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965. The Supreme Court explained that this new standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id.* On the other hand, the Court noted that "of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Id. (*quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

When considering a motion to dismiss, courts are still required to accept the complaint's factual allegations as true. *Id.* at 1965. All reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.,* 388 F.3d 588, 590 (8th Cir. 2004). "In considering a motion to dismiss, courts accept the plaintiff's factual allegations as true, but reject conclusory allegations of law and unwarranted inferences." *Silver v. H & R Block, Inc.,* 105 F.3d 394, 397 (8th Cir. 1997). Furthermore, the Court, in construing the Complaint, may also consider the attachments thereto. Any written instrument attached to a complaint is considered a part of the complaint, and may be considered in ruling on a motion to dismiss. Fed.R.Civ.P. 10(c); *Quinn v. Ocwen Federal Bank FSB*, 470 F.3d 1240, 1244 (8th Cir. 2006) ("[W]ritten instruments attached to the complaint become part of it for all purposes. *See* Fed. R.Civ.P.10( c). 'For that

reason, a court ruling on a motion to dismiss under Rule 12(b)(6) may consider material attached to the complaint.' *Abels v. Farmer's Commodities Corp.*, 259 F.3d 910, 921 (8th Cir. 2001)").

Defendants, relying on *Totten* and cases which follow *Totten*, argue that the Plaintiff cannot state a claim under the mechanism set up for the payment of Medicaid claims.[4] This argument, however, too narrowly limits the scope of the FCA and attempts to extend the holding in *Totten*. The *Totten* Court rejected the "effective" presentment argument made with respect to claims made to Amtrak. However, claims for reimbursement under the Medicare and Medicaid programs are not the same. The Medicaid system has been held to fall within the ambit of the FCA as follows[5]:

> Medicaid, which is based upon a comprehensive funding and reimbursement structure between the state and federal governments, is different from the federal funding mechanism for Amtrak, a government-sponsored private enterprise. Under Medicaid, the state pays health care providers for services rendered to Medicaid recipients,

---

[4] Defendants originally disputed the claims with respect to Medicare reimbursement, but have apparently abandoned this argument since the Reply is devoid of any further Medicare reimbursement discussion *vis a vis* the presentment requirement.

[5] Curiously, Defendants strongly criticize Plaintiff for failing to discuss and distinguish all cases they have cited in their brief. Notwithstanding this criticism, Defendants themselves fall short of discussing Plaintiff's authority, particularly the cases discussing the applicability of the FCA to Medicaid claims and the more recent Sixth Circuit Court opinion discussing the presentment aspect of the FCA, *Sanders v. Allison*, 471 F.3d 610 (6th Cir. 2006), *cert granted*, 2007 WL 2374900 (Oct. 29, 2007).

and it is reimbursed for a significant portion of those funds by the federal government after demonstrating compliance with a number of federal regulations. *See* 42 C.F.R. §§ 430.0-430.30 (2005). Indeed, several courts have highlighted the substantial role played by the federal government in its funding and enforcement of Medicare and Medicaid programs, and have found frauds upon such programs to fall squarely within the protections of the FCA. *See Peterson v. Weinberger,* 508 F.2d 45, 52 (5th Cir.1975); *United States v. Catena,* 500 F.2d 1319, 1322 (3d Cir.1974); *United States ex rel. Fahner v. Alaska,* 591 F.Supp. 794, 798-99 (N.D.Ill.1984); *United States v. Jacobson,* 467 F.Supp. 507 (S.D.N.Y.1979); *United States ex rel. Davis v. Long's Drug, Inc.,* 411 F.Supp. 1144, 1146-7 (S.D.Cal.1976); *but see United States ex rel. Atkins, M.D. v. McInteer, M.D.,* 345 F.Supp.2d 1302, 1304 (N.D.Ala.2004).

> Furthermore, Subsection (c) of the FCA, which was added as part of a series of Amendments to the FCA promulgated in 1986, casts significant doubt on Defendants' contention that Medicaid claims fall outside the FCA because they are presented in the first instance to states. That subsection defines a "claim" to include: any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded. 31 U.S.C. § 3729(c).

*U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.,* 2005 WL 2667207, *2 (N.D. Ill. 2005).

> The Medicaid program provides "medical assistance to individuals and families whose resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396. In order for a drug to be eligible for reimbursement through Medicaid, the drug's manufacturer must enter into a rebate agreement with Medicaid that ensures that the price Medicaid pays is a competitive one. 42 U.S.C. § 1396r-8(a)(1). Medicaid providers, such as pharmacies, pay drug manufacturers for prescription drugs and, in turn, submit claims to state Medicaid agencies

- 8 -

for reimbursement. 42 U.S.C. § 1396a(a) (23), (a)(32). While claims are submitted to state Medicaid agencies, the federal government reimburses states for a substantial portion of the funds allotted. 42 U.S.C. § 1396. For this reason, claims submitted to state Medicaid agencies are considered claims presented to the federal government and may give rise to liability under the FCA. U.S. ex rel. Tyson v. Amerigroup Illinois, Inc., 2005 WL 2667207 at *3 (N.D. Ill. 2005).

*U.S. v. Ortho-McNeil Pharmaceutical, Inc.,* 2007 WL 2091185, *2 (N.D.Ill. 2007).

In the context of the FCA public disclosure element, the Eighth Circuit Court of Appeals has recognized that Medicaid claims fall within the ambit of the FCA, pursuant to the legislative history of the Act:

> Section 3730(e)(4)(A) provides that the source of a public disclosure must be a "criminal, civil, or administrative hearing ... a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or ... the news media." Only public disclosures from one of these enumerated sources may give rise to the FCA jurisdictional bar. See, e.g., United States ex rel. Rabushka v. Crane Co., 40 F.3d 1509, 1513 n. 2 (8th Cir.1994), cert. denied, 515 U.S. 1142, 115 S.Ct. 2579, 132 L.Ed.2d 829 (1995). Hays and the United States as intervenor argue that the DHS audits and audit reports do not fall within the category of "administrative ... report [or] audit" because they were not conducted and prepared by an agency of the federal government. They rely upon United States ex rel. Dunleavy v. County of Delaware, 123 F.3d 734, 745 (3d Cir.1997), where the court reasoned that because the second use of the word "administrative" in § 3730(e)(4)(A) is surrounded by "congressional" and "Government Accounting Office," Congress must have meant to include only reports, audits, and investigations of federal government agencies. The district court noted but did not address this issue. We reject the Third Circuit's textual approach and conclude that Medicaid compliance audits and audit reports conducted and prepared by the state agency authorized to

administer this cooperative federal/state program are public disclosures within the meaning of § 3730(e)(4)(A).

In the first place, applying the Third Circuit's contrary ruling to the federal Medicaid and Medicare programs would produce anomalous results. When Congress amended the FCA in 1986, it defined "claim" to include requests for money made to grantees of the federal government, *see* 31 U.S.C. § 3729(c). The legislative history explained this was done to clarify that false claims for FCA purposes include claims submitted to state agencies under the Medicaid program and other "State, local, or private programs funded in part by the United States where there is significant Federal regulation and involvement." s. Rep. No. 99-345 at 22, 1986 U.S.C.C.A.N. at 5287. It would be an inconsistent interpretation of the 1986 amendments to conclude that a fraudulent payment request submitted to DHS is a false claim against the United States for purposes of § 3729(c), but a DHS audit is not an "administrative audit" for purposes of § 3730(e)(4)(A) because DHS is not a federal agency.

In the second place, this subpart of § 3730(e)(4)(A) has not been rigidly limited to disclosures by federal agencies or legislative bodies in other contexts. For example, under Medicare, Congress has delegated many administrative tasks to private insurance companies. In *Nurse Anesthetists,* 276 F.3d at 1043-44, we described an audit performed by an insurer for the federal Department of Health and Human Services (HHS) as an "administrative audit" that could trigger the jurisdictional bar. Similarly, in *United States ex rel. Schwedt v. Planning Research Corp.,* 39 F.Supp.2d 28, 31-33 (D.D.C.1999), the court held that public disclosures in an audit report prepared for the federal government by an outside accounting firm satisfied the jurisdictional bar. These cases suggest that anti-fraud compliance audits conducted by state or local agencies or private contractors should qualify as public disclosures if they are prepared by or at the behest of the relevant federal agency, or by or at the behest of a state agency that administers the federal grant program under "significant Federal regulation and involvement."

Construing the term "administrative ... report [or] audit" in this fashion, we conclude that the DHS audits here in question, like the private Medicare audits at issue in *Schwedt,* clearly qualify. Medicaid, codified at 42 U.S.C. §§ 1396 *et seq. ,* is a cooperative federal-state

> program through which the federal government provides financial assistance to assist States in furnishing health care to the poor. *See Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 502, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). State governments administer Medicaid, but they function under detailed federal statutory and regulatory controls in exchange for fifty percent federal financing. Participating States must develop a state plan for medical assistance, develop cost-based payment rates to reimburse medical providers for services rendered to eligible recipients, and designate a single agency to evaluate cost reports submitted by private vendors of health services and reimburse vendors for allowed expenses. *See* 42 U.S.C. § 1396a(a); 42 C.F.R. § 431.10(b)(1). . .
>
> Viewed from this perspective, the Third Circuit's decision in *Dunleavy* is readily distinguishable on the facts. The alleged public disclosure in that case was a county Grantee Performance Report submitted to the Department of Housing and Urban Development by the unit of local government accused of violating the FCA. As the Third Circuit noted, "those reports have been compiled and produced by a party whose principal motivation (assuming the truth of the fraud claim) is the elimination of the paper trail of fraud." 123 F.3d at 745.
>
> Moreover, under the federal grant program at issue in *Dunleavy*- the Housing and Community Development Act of 1974-grantee compliance audits are conducted by federal agencies, HUD and the General Accounting Office. *See* 42 U.S.C. § 5304(e), (f). Congress did not delegate that function to a state agency, as is the case with Medicaid. Thus, while we do not disagree with the Third Circuit's decision in *Dunleavy,* we conclude the court ruled more broadly than necessary in stating that a state agency disclosure may never be an "administrative ... report [or] audit" for purposes of § 3730(e)(4)(A).

*Hays*, 325 F.3d at 988 -989.

Plaintiff's Complaint, therefore, alleging that Defendants presented or caused to be presented false Medicare and Medicaid claims withstands challenge.

Defendants also contend that Plaintiff has failed to allege fraud with sufficient particularity pursuant to Rule 9(b) of the Federal Rules. Complaints alleging fraud must comply with Rule 9(b) of the Federal Rules. Under Rule 9(b), "the circumstances constituting fraud ⋯ shall be stated with particularity." Rule 9(b)'s "particularity requirement demands a higher degree of notice than that required for other claims," and "is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *United States ex rel. Costner v. URS Consultants, Inc.,* 317 F.3d 883, 888 (8th Cir.2003) (citing *Abels v. Farmers Commodities Corp.,* 259 F.3d 910, 920-21 (8th Cir.2001)). To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result. *See, e.g., Schaller Tel. Co. v. Golden Sky Sys., Inc.,* 298 F.3d 736, 746 (8th Cir.2002). The complaint must identify the "who, what, where, when, and how" of the alleged fraud. *Costner,* 317 F.3d at 888 (citing *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 550 (8th Cir.1997)); *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.,* 441 F.3d 552, 556 (8th Cir. 2006). Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." Rule

9(b) requires more than "conclusory and generalized allegations." *Joshi,* 441 F.3d 552, 557(citing *Schaller Tel. Co. v. Golden Sky Sys., Inc.,* 298 F.3d 736, 746 (8th Cir.2002) ("'[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy [Rule 9(b) ].'") (quoting *Commercial Prop. Inv. v. Quality Inns,* 61 F.3d 639, 644 (8th Cir.1995).

The Court agrees with Plaintiff that it has set forth the who, what, where, when and how of each of the allegedly false claims. In its description of the fraudulent claims, Plaintiffs details the residents for whom services are claimed; the dates the allegedly worthless services were rendered, the facilities where the residents reside, and which facilities submitted which claims to Medicare and Medicaid. Furthermore, the Complaint details the roles of the Corporate entities and the individual owner, Kent Harrington *vis a vis* the allegedly fraudulent claims. For example, the Complaint alleges that these defendants participated in a scheme to increase profits and census which was effectuated through the submission of the alleged false claims. Such participation gives rise to Plaintiff's claims that the specific defendants caused the false claim to be presented for payment. As the Eighth Circuit acknowledged in *Joshi,* "Nothing requires [the plaintiff] to state every factual detail concerning every alleged fraudulent claim submitted...." *Joshi,* 441 F.3d at 560. Thus, the detailed Complaint sufficiently sets forth the alleged fraud

with the requisite particularity as mandated by Rule 9(b).

Count III of the Complaint, however, fails to set forth a claim for conspiracy. Nowhere does Plaintiff set forth facts which would apprise Defendants of an alleged conspiracy that exists outside the corporate structure such as would give rise to liability under the *Twombly* standard. As Defendants argue, as this Count is written, it appears to attempt to state a cause of action for conspiracy between the corporate entities, their subsidiaries and their employees. Although Plaintiff argues in response that this is not the intent, Defendants are entitled, under the applicable pleading Rules 9(b) and 12(b)(6), to facts which establish that the alleged conspiracy exists outside the intra-corporate immunity doctrine. Count III, therefore will be dismissed. Plaintiff will be given leave to amend.

The Court is unpersuaded by Defendants' argument that a cause of action for "worthless services" cannot survive. A "worthless services claim is a distinct claim under the Act. It is effectively derivative of an allegation that a claim is factually false because it seeks reimbursement for a service not provided. *See Fabrikant & Solomon*, *supra,* at 111-12. In a worthless services claim, the performance of the service is so deficient that for all practical purposes it is the equivalent of no performance at all. *Mikes v. Straus,* 274 F.3d 687, 703 (2d Cir. 2001). See also, *U.S. v. Wachter*, 2006 WL 2460790 (E.D. Mo. 2006)("Courts that have applied the

'worthless services' doctrine in civil cases have defined 'worthless services' as services 'so deficient that for all practical purposes it is the equivalent of no performance at all.' *Mikes v. Straus*, 274 F.3d 687, 702 (2nd Cir.2001). This doctrine has been recognized as a basis for relief under the civil False Claims Act. Id.; *United States v. SmithKline Beecham, Inc*., 245 F.3d 1048 1053 (9th Cir.2001); *United States v. Covenant Care, Inc.*, 279 F.Supp.2d 1212, 1216 (E.D.Cal.2002); *United States v. NHC Health Care Corp.*, 163 F.Supp.2d 1051, 1056 (W.D.Mo. 2001). In the civil context, courts have held that 'a worthless services claim asserts that the knowing request of federal reimbursement for a procedure with no medical value violates the [False Claims] Act irrespective of any certification.' *Mikes*, 274 F.3d at 702.")

Plaintiff alleges that the services provided were so deficient as to be worthless and thus constitute a false claim.  The Complaint includes substantial descriptions of these allegedly deficient services  At the pleading stage of this litigation, it cannot be said Plaintiff can prove no set of facts consistent with these allegations which would entitle Plaintiff to relief.  As such, the motion to dismiss on this ground is denied.

## Conclusion

Based upon the foregoing, the Motion to Dismiss for lack of subject matter

jurisdiction is denied. The Motion to Dismiss for failure to state a cause of action is denied except as to Count III; Plaintiff will be given leave to amend.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss, [Doc. No. 51] is GRANTED in part and DENIED in part.

**IT IS FURTHER ORDERED** that Count III of Plaintiff's Complaint is DISMISSED.

**IT IS FURTHER ORDERED** that Plaintiff is given 14 days from the date of this Order to file an amended Count III.

Dated this 30th day of November, 2007.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE